And we will move to our next appeal. Coral Ridge Ministries Media v. AMAZON and the Southern Poverty Law Center. And David Gibbs is here for the appellate Coral Ridge. Shannon Holliday is here for the Southern Poverty Law Center. Ambika Doran is here for AMAZON. And Mr. Gibbs, are you ready to proceed? Yes, your honor, I am. May it please the court. My name is David Gibbs and I have the privilege of representing Coral Ridge Ministries. We're before this court on an appeal against two defendants. It's a case that has had no discovery up to this point and it was dismissed on a motion to dismiss. And I frame that for the court to understand that, according to the pleadings, everything should be interpreted to the benefit of my client. There's two parts to the case. The first part, your honors, is a defamation case that has been brought against the Southern Poverty Law Center, one of the defendants in this case. The second part is a discrimination case that has been brought against AMAZON under Title 2. And we would argue before this court that very prematurely and very inappropriately, without any discovery, the district court dismissed the cases and did not allow them to proceed forward. If I could explain just briefly, the Southern Poverty Law Center posts what they call a hate map. And they list on this groups that they argue are hateful. And it has been controversial. There have been instances, for example, in Washington, D.C., where someone went in and shot a security guard based on what was on this map. There's been a situation where Southern Poverty Law Center has paid millions of dollars and announced publicly that they made a mistake in putting somebody on the map. And their officials publicly essentially use this map to bully and try to destroy the groups that are on it. And so it's intentionally stated to have a very defamatory, very negative effect. And to be quite honest, there's some really horrible people on it when you look at the map. But when you have a historic Christian ministry, an organization that is based on the Bible, believes the Bible, preaches the Bible, the founder of the organization, D. James Kennedy, has been deceased now for 13 years. And so the messages of this organization are historic. They're Christian. They would line up with traditional religious views, whether it would be Catholic or Jewish or even Muslim, certainly Protestant. But they preach a message. For them to be put on this map, as a matter of fact, and have the whole world be told that they are a hate group, we believe is defamatory. Now, what the court did in the district court is they said, well, you're not going to be able to really prove that. And we would counter that we would certainly be able to prove it if we were given the opportunity to move forward and to produce evidence. Mr. Gibbs, with regard to the defamation claim against the Southern Poverty Law Center, do you have to allege actual malice on behalf, on the part of the Southern Poverty Law Center? We would argue we did allege it. So to answer that question, we would argue. Can you point me to the paragraph in your complaint where you allege actual malice? Your Honor, what we pled was that they published the hate map without actual knowledge or disregard as to falsity. We said that the ministry promotes the gospel, which promotes the love of all people, that nowhere in our mission or action is there hate or any room for hate. We allege that they equated us with real hate groups without explaining any possible association or disclosing any facts that would show they weren't associated with each other. Southern Poverty Law Center could have easily read our bylaws, our purpose statement, and known that what they were putting was false. And so we believe clearly that we did allege it. But we might also argue under Alabama law. What paragraphs are those that you just read from? Your Honor, I can get the exact paragraphs. I don't have them right in front of me to give you. You and your amici do spend some time arguing against the actual malice standard, though. Doesn't that suggest that whether you like it or not, that is currently the law and that's what the district court applied and what we would need to apply? Are you perhaps preserving that argument for the future? We're certainly preserving it for the future, but we believe that in this case, Judge Grant, we would be able to establish actual malice based on these facts. And one of the interesting elements under Alabama law, indirect defamation, where you present something as a fact without giving the context of it, does indeed not even require the actual malice standard because it's presumed that when you're publishing it in that way, that you knew what you were doing. And so we certainly do believe that the Supreme Court in the Cosby case has put this actual malice standard at issue. We're not here to ask this court to overturn it, but to say that, indeed, it is a question of law as to whether certainly the common law did not require it. Defamation law did not require it. And we believe that what the district court did here was they substituted the trained legal mind, the brilliant legal mind of a district court judge who took 14 pages and tried to delineate what was a hate group or could be defined as a hate group and came to the conclusion that it would be very, very difficult. We believe that that was inappropriate, that we should have been given an opportunity to go to the people of Alabama. We believe words have meaning, that indeed, if someone says you are a hate group, you are a group that hates. And it's designed to be a factual statement. It's designed for people to not do business with you. I mean, the case with two components kind of proves itself in the sense that Amazon says we will work with any nonprofit organization through this SMILE program where we give a allow purchasers to go through the SMILE program unless you're on this Southern Poverty Law Center hate map. And so it's fairly obvious that the intention of the hate map is not to just say, you know, in our opinion, these are not nice people. It's designed to say these are hateful, discriminatory people. And the problem is you don't know how to get on the map. I mean, this little church in Florida is being, you know, bullied by this huge organization that has huge influence, huge amount of funds. You don't know how to get off. You get identified with all these other folks. And then everybody else that believes the Bible isn't on the list. If they chose to list every Southern Baptist church in Alabama, they said, we're going to take every Catholic parish. We're going to list all the organizations that believe the Bible. Well, then it would be a really big list of Bible believing people. But for them to target and attempt to destroy certain organizations, we believe is absolutely defamation. And then for Amazon, and I want to raise this because, again, I have two defendants and time is quick. For Amazon to take the position, I find it kind of shocking, quite honestly, that Title II doesn't apply to them. That, you know, we're Amazon and we can discriminate based on race. We can discriminate based on religion, that we don't have to play by the rules because we're not under Title II. And I believe, and the district court didn't really reach that. Mr. Gibbs, I think their strongest argument is that the complaint lacks sufficient allegations of intentional discrimination. Does Title VII allow claims of disparate impact? Is this a disparate impact case, or do you have to allege intentional discrimination on the part of Amazon? Well, Your Honor, two things. With no discovery, obviously, we could argue that relying on the Southern Poverty Law Center could certainly be intentional. But we believe disparate impact is allowed. And while this court— Are you able to cite a case? Yes, Your Honor. The lower cases have suggested it. If you look at Robinson v. Pizza Power, the court relied on a Title VII case. And there's a lot of analogies when you look at the cases under the ADA. Title II has not been litigated. And again, that's kind of why it's a little surprising to me that Amazon doesn't step forward and say, we want to not discriminate based on these grounds. And we're gladly willing to be under Title II. Isn't it pretty different, though, to say that Amazon needs to serve all people? Let's say they can't have a check which race you are button before you buy a product. But why can't Amazon give its money as a gift to whoever it sees fit? Why would that apply in the same way that Title II applies in other situations? Amazon can give its money to whoever they want. But when they put a service of privilege and advantage and they say, we will let purchasers select the charity of their choice and give them a half a percent discount, it's a different price, including when you're the purchaser yourself. So Coral Ridge Ministries goes to Amazon. They will pay half a percent more because they believe the Bible. And I believe that that is an illegal discrimination under Title II. So Amazon can do what they want with their money. But when they set up a program and say, we are going to select charities and we are going to allow them to be designated with regard to the purchasers themselves. And obviously, Amazon is very sophisticated. They've got a huge marketing team. They understand certainly in this COVID world, the influence and the scope that they have is only grown, not shrunk. But for them to say, we're going to rely on the Southern Poverty Law Center hate map that is overtly targeted this organization, and we are going to discriminate against them because of their sincerely held religious belief, their belief that the Bible is true and that God speaks to morality and conduct. When that is allowed, we believe, Your Honor, that that is very much discrimination. And we're not asking Amazon to support anything they don't want to support. We're asking them to make sure their programs that they have made available to these other nonprofit organizations as a privilege, advantage, and service of doing business with Amazon comports with Title II. And with regard to- Could Amazon say, we are setting up a program where we will only offer this charitable benefit to groups that affirmatively endorse, say, same-sex marriage. Would Amazon have the right to do that? Your Honor, I would say, no, they do not, if Title II applies, because that would be religious discrimination. So if they chose to put this program in place and create a religiously discriminatory criteria, I believe that would be a violation of Title II. Now, Amazon could say, we're only going to do this for schools, or we're only going to do this for soccer clubs. They could have a limited program. But when they start moving into religious belief, and they're going to criteria, just like a hotel or a restaurant can't say you can only come if you're Baptist or Catholic, in the same way, Amazon would be prohibited under Title II. And I am out of time. I will continue answering questions, or I have reserved some time at the end. All right. Thank you, Mr. Gibbs. He's reserved. Thank you, Your Honor. And we'll hear from Miss Holliday. You have to unmute, Your Honor. Unmute. I'm so sorry. I have seven signs up here that say unmute, and I didn't do it. You've all done it. My name is Shannon Holliday. I represent the Southern Poverty Law Center, also known as the SPLC. CRM Media's defamation claim is based on the SPLC's designation of D. James Kennedy Ministries, which is operated by CRM Media as an anti-LGBT hate group. LGBT is an acronym for lesbian, gay, bisexual, and transgender, as you probably know. The SPLC defines hate groups as groups that have beliefs or practices that attack or malign an entire class of people, typically for immutable characteristics. The SPLC publishes this list on its website, along with the definition of hate group. CRM Media acknowledges that the designation is based on CRM Media's beliefs, quote, regarding lesbian, gay, bisexual, transgender conduct, close quote. CRM Media also alleges in its complaint that its media programs broadcast television programming worldwide. This is not some small church in South Florida. It concedes without any argument that it is a public figure. The complaint establishes that CRM Media's mission is to communicate its beliefs to the and to help believers understand America's Christian heritage. CRM Media publicly espouses, quote, biblical morals and principles, close quote, and among those is its opposition to same-sex marriage and what it terms, quote, the homosexual agenda, close quote, based on religious beliefs. This is all in the complaint. The complaint further establishes that CRM Media espouses the view that homosexual conduct is, quote, lawless, unrighteous, and abomination, vile, and shameful. The complaint acknowledges that CRM Media's view on, quote, biblical morals and principles concerning human sexuality and marriage, close quote, are in its view, quote, the principles upon which this nation was founded and built, close quote. In other words, they have a mission to spread this to the world and to convert people to this position. The argument below- Judge Holliday, this is Judge Wilson. Yes, sir. Assuming that New York Times versus Sullivan is still the law of the land, Mr. Gibbs articulated some, he read from parts of the complaint that he relies upon to support his argument that they have sufficiently alleged actual malice. What is your response to that? Well, our response to that is that if you rely on the portions of the complaint that he cited, he is saying that because we could have read their bylaws, we would have seen that they promote love and not hate. And for that reason, we could not, as a matter of, you know, First Amendment law, categorize them as a hate group. Our position is we think that the way they speak of homosexual conduct in the LGBT, quote, agenda and oppose it does constitute hate. We have a difference of opinion and our opinion is valid and is not in any way- Why shouldn't that be the subject of discovery? Go ahead. Well, here's really, they don't deny that they have these views. The subject, the district court's holding is that the Southern Poverty Law Center could not, based on the views and positions taken by the church, which they acknowledge is in their complaint, that the Southern Poverty Law Center could not define hate group as it does. Now, they fall within our definition of hate group, which is a group that maligns an entire group of people because they do malign an entire group of people in the sense that their views that they espouse and they acknowledge are that the LGBT conduct is vile and hateful and shameful. And so- Speaking, I'm sorry to interrupt, but I want to make sure to ask you before your time runs out. Speaking of your definition, you seem to want to have it both ways. Would you say that your definition of hate group is objective or a subjective definition? Well, as the district court pointed out, it is a hate group and the definition are things that are subjects of political debate and political discussion. And SPLC has defined it one way, and that is an opinion, a subjective belief, and something that cannot be provably false. And that's the first finding and holding of the district court's opinion, which is aside from actual malice and doesn't rely on actual malice. Actual malice was rightly- There was no actual malice found by the district court as well reasoned opinion. But the first part is this notion that the concept of hate group is a concept that's not provably false. And so the SPLC could define it as the Anti-Defamation League has, as the FBI has, as Coral Ridge would like it defined, and they've defined it two or three different ways. And really the way that the entire case was sort of posited in the court is Coral Ridge's by definition a group that violates the law or encourages violence. And we showed, and the district court understood from even the definitions provided by Coral Ridge, that the definition of a hate group is different depending on which organization you ask. It's a flexible, loose, and debatable concept. And therefore, because there's no fixed definition of it, it's not like the Milkovich perjury or a criminal act, which is defined in objective. It is something that is the subject of public debate, like in the cases of Buckley and Olman, calling someone a Marxist or calling someone part of the radical right. These are concepts that are debatable and loose, and they are concepts that are part of the political spectrum. And so when you can't objectively prove it, you can't have a defamation claim based on it. It's not provably false. Isn't it harder to say that you're not trying to set out an objective standard when you actually provide a specific definition? That's where I'm sensing a little bit of tension. No, not at all. We provide the definition so people can understand what our definition of hate group is. And they do not credibly argue that they don't fall within our definition, Your Honor. So that's not the issue. The issue before you is whether our definition is something that you or a juror could say is an objective one and that one falls within or without and that our definition is, in fact, wrong. They say our definition is so far from the definition that they use, which is no one else's definition, that we were defaming them. All right. Thank you, Ms. Oliver. And we'll now hear from Ms. Duran on behalf of Amazon. May it please the court. My name is Ambika Kumar Duran. I'm here on behalf of Amazon.com Inc. and the Amazon Smile Foundation. Because my time is brief, I'll focus here on two arguments. First, the Amazon defendants did not discriminate against the ministry on the basis of would force Amazon Smile, a private charitable foundation, to donate money to a group with whose message it disagrees. Although we've heard a lot about place of public accommodation from Mr. Gibbs, as Your Honor mentioned, Judge Wilson, that's not necessary to this court's decision to affirm the district court's decision. Turning to the issue of discrimination, Amazon Smile is a charitable foundation. The foundation allows customers who buy goods from the website smile.amazon.com to help pick a charity for the foundation's donations. The ministry is not alleging that it can't purchase goods on Amazon.com or smile.amazon.com. Instead, its claim is that it was not among the charities eligible for a donation from the Amazon Smile Foundation. The reason for that is not discriminatory. It's because the ministry failed to satisfy the neutral eligibility requirements to receive donations from Amazon Smile. The criteria Amazon Smile uses to decide whom its money can be directed to are not discriminatory. First, a charity has to be a 501c3. Second, it has to agree to abide by the Amazon Smile participation agreement. And third, it may not, quote, engage in, support, encourage, or promote intolerance, hate, terrorism, violence, money laundering, or other legal activities. That's paragraph 44 of the complaint. Amazon Smile, as the complaint also alleges, quote, relies on the U.S. Office of Foreign Assets Control and the Southern Poverty Law Center to determine which registered charities fall into this group, into these groups. That's also paragraph 44. And as we've heard, the Southern Poverty Law Center designates on its hate map groups with, quote, beliefs or practices that attack or malign an entire class of people, typically for their immutable characteristics. That's paragraph 59. The complaint also alleges that Amazon has no, quote, independent review or standards of its own, as entities designated by SPLC are, quote, automatically ineligible for participation. The criteria are neutral with respect to religion. Religious or not, if the SPLC determines that you satisfy its religion-neutral criteria to be on their hate map, you can't be eligible for donations from the Amazon Smile Foundation. And indeed, there is no allegation that Amazon treated the ministry any differently than similarly situated organizations that are not religious. In such circumstances, there can be no claim under Title II because there is no intentional discrimination. Judge Wilson, you asked about disparate impact and whether disparate impact claims are available under Title II. And the answer to that question is no. The text of the statute is that all persons shall be entitled to the full and equal enjoyment of, et cetera, et cetera, et cetera, without discrimination or segregation on the ground of race, color, religion, or national origin. The words on the ground of require intent. And the Supreme Court has basically said as much or has said as much in the context of Title VI. Title VI also says that no person shall on the ground of race, color, or national origin be excluded from, et cetera, et cetera, et cetera. And the Supreme Court has held that Title VI itself reaches only instances of intentional discrimination. Statutes that permit disparate impact claims have different language that is more results oriented, things like otherwise adversely affected, as in Title VII, for example. And even if a disparate impact claim were appropriate, the ministry has not alleged that claim. A plaintiff who fails to allege the Texas Department of Housing and Community Affairs Inclusive Communities Project, a plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact. As a district court held here, the ministry does not even allege an elementary statistical disparity. There's no allegation that the eligibility requirement results in a disproportionate exclusion of Christian or religious organizations. The ministry does not even allege that Christian or religious organizations are more likely than other similarly situated groups to oppose homosexual conduct, as it admits that it does. In other words, the district court was right when it found that Amazon did not discriminate on the basis of religion against the ministry. Turning to the second argument, unless your honors have questions about the discrimination argument, turning to the next argument, the First Amendment argument, it's a bedrock principle that people in this country cannot be forced to donate money to a third party that they don't want to support. And that's exactly what the ministry is asking for here. The ministry's only response to this argument in the briefing and now is that Amazon Smile is some kind of conduit for money from other people. But the complaint admits in paragraph 43, when customers shop on Amazon Smile, the Amazon eligible purchases to the charitable organization selected by customers. In other words, it is the Amazon Smile Foundation's money that is being donated, not the money of customers. And the First Amendment does not permit the ministry or anyone else to tell it who it should donate money to or who it must donate money to. And for these two reasons, the court should affirm the district court's decision. Thank you, Ms. Doran. And Mr. Gibbs, you reserve some time for rebuttal. I did, your honor. It please the court just very briefly. Again, there's been no discovery and everything in the complaint should inert to the benefit of my client. The issue is for an Alabama jury to decide whether it means anything. Obviously, it means something to Amazon because they use it to discriminate against our client. Now, there'd be a litany of other people that would share the same beliefs as our client that would preach the Bible, that would believe in the historic biblical teachings from Genesis through Revelation that are allowed to be part of the program. And so I would strongly advocate that the reliance on Milkovich, the court was very clear there that when you present it as a fact, this is a hate group. That's the whole reason why they have the website, that they have to be held responsible for that incorrect statement. And they're saying that by their definition, you attack or malign. Did you make that argument in the district court relying on Milkovich? No, your honor. We pled at that point with regard to New York Times v. Sullivan. And so it's a progeny. But we did believe and certainly would believe that it is preserved. We're under no statute of limitations or any issue like that because the issue is ongoing. I mean, we continue to be defamed and we continue to be discriminated against. I would like to also just point out that Amazon wants to avoid one huge fact, which is their selection of the Southern Poverty Law Center. Why would they pick a group that is anti-Bible, anti-God, anti-religion as their choice? And so if they were to go pick the Catholic Church, well, then other groups that are not Catholic may say, well, why did you select that group as your criteria? If they were to go select the Southern Baptist Convention, others would say, well, why did you select that group? So when you deliberately and intentionally select and rely upon a group that is overtly, and I'll use their word, hateful towards people that believe the Bible. Why can't Amazon as a private organization exercise its own First Amendment rights to support the causes that it prefers to support? Certainly, groups all over the country prefer different causes and different perspectives on issues. Why can't Amazon operate in the same way as any other entity in that regard? Judge Grant, if it's their money, they can. When you set up a program as a service privilege and advantage of doing business and they take the money as fiduciaries from the customer, that is not Amazon's decision. That's the customer's decision. And the customer is being incentivized. I mean, Amazon has only exploded in growth, as we all know, during the pandemic. The reality is they have set up a fiduciary model that has tacit discrimination built into it because of their reliance. Did you make the fiduciary argument at the district court? Yes, we did, Your Honor. All right. Well, thank you very much, counsel. Respectfully, thank you. We have one appeal to be argued. But before we hear the arguments in that appeal, the court will take a 10 minute recess. We'll be in recess for 10 minutes.